UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aida Beltran,                                                                    Civ. No. 17-1118 (PAM/HB)

            Plaintiff,

v.                                                                                       **MEMORANDUM AND ORDER**

Eric Rollie and Nate Barker, in their
individual capacities,

            Defendants.

---

This matter is before Court on Defendants' Motion for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

At approximately 1:15 am on November 22, 2014, Defendant Wabasha County Sheriff's Deputy Eric Rollie witnessed a car rolling through a stop sign in Elgin, Minnesota. (Rollie Aff. (Docket No. 30) ¶ 3.) Rollie pulled the car over, and as he approached it, he noticed a back-seat passenger snuffing out a cigarette. (Id. ¶ 4.) This aroused Rollie's suspicions, because often individuals smoking cigarettes as an officer approaches are doing so to cover up the scent of something, such as alcohol or drugs. (Id.)

Plaintiff Aida Beltran was driving the car. Rollie asked Beltran where the group was headed, and she responded that they were going to Oronoco. (Id. ¶ 6.) This further aroused Rollie's suspicions, because the car had rolled through the stop sign toward a residential area, not toward the road that led to Oronoco. (Id.) Rollie also noticed the

odor of alcohol and marijuana in the car through the open windows. (Id. ¶ 5.) He asked whether there were any alcohol, drugs, or weapons in the car, and the three occupants answered no. (Id. ¶ 7.)

Beltran told Rollie that she was the sober driver for her two male passengers, who had been drinking that evening. (Id. ¶ 6.) The front-seat passenger, Abraham Algadi, identified himself as the car's owner. He told Rollie that he did not have proof of insurance on the vehicle because he had just purchased insurance several days before. (Id. ¶ 8.) Rollie took the occupants' licenses with him to his squad car to run them through dispatch. (Id. ¶ 9.) At approximately this same time, Defendant Deputy Nate Barker arrived on the scene. (Id.) Rollie asked Barker to attempt to get verification of insurance from Algadi, and Barker thus approached the vehicle. Barker also noticed the strong odor of marijuana in the vehicle. (Barker Aff. (Docket No. 29) ¶ 2.)

Because both Deputies believed that the vehicle contained drugs, they approached the vehicle again with the intent to remove the three passengers for a search of the vehicle. Deputy Rollie asked again whether there were any drugs in the car, and the occupants said no. (Id. ¶ 14.) Rollie told Algadi that he was going to search the car because he believed they had marijuana, and asked Algadi to exit the vehicle. (Id. ¶¶ 14-15.) The back-seat passenger, Corey Drewes, objected, saying that the officers could not search the car. (Id. ¶ 15.)

As Barker was escorting Algadi away from the car, Rollie noticed that Beltran started digging in her purse. (Id. ¶ 17.) Rollie told Beltran to put her hands on the steering wheel, and she did. (Id.) As Rollie stepped closer to the car to speak to Beltran,

2

he noticed the end of a gun magazine sticking out of Drewes's pants. (Id.) Rollie drew his weapon and told Drewes to place his hands on the ceiling of the car. (Id. ¶ 18.) Rollie called for assistance, and Barker took Drewes out of the car and secured the weapon. (Id. ¶ 19.) The gun was loaded and the safety was off; Drewes also had another magazine for the gun in a holster. (Barker Aff. ¶ 9.) As Barker removed Drewes from the car, a baggie of marijuana fell from Drewes's crotch area. (Id.)

After securing Drewes, Barker removed Beltran from the car. While she was leaving the car, Barker saw Beltran slip her hands under her shirt and tug on her clothing. (Id. ¶ 15.) He decided to pat her down to ensure that she, too, did not have a weapon or drugs, and he conducted a brief pat-down of the area she had been touching. (Id. ¶ 16.) Barker then asked Beltran whether she would prefer to wait in the squad car, because it was cold outside and she was not wearing a coat. (Id. ¶ 17.) Beltran ultimately agreed to sit in the car. (Wolfe Aff. (Docket No. 31) Ex. 1 (Beltran Dep.) at 66.)

The Deputies then began to search the car, and another officer, Plainview Officer Brandon Miller, arrived. (Rollie Aff. ¶ 21.) The search revealed another bag of marijuana, stuffed in a beverage bottle that had been in a cupholder between the front seats, and a black scale with marijuana residue inside one of Beltran's boots. (Rollie Aff. ¶ 22; Barker Aff. ¶ 19.) They also found a large amount of cash in Beltran's bag. (Barker Aff. ¶ 22.)

After the search, the Deputies consulted with the on-call Wabasha County Attorney regarding charging decisions. Barker returned to his car, and Beltran told him that she had to go to the bathroom. (Id. ¶ 21.) Barker told her that there was no restroom

3

nearby.  (Id. ¶ 22.)  Approximately 20 minutes after requesting to use the bathroom, Beltran was allowed to return to the car.  Rollie's squad video shows her leaving at 2:19 am, or slightly more than an hour after Rollie first stopped the car.  (Warren Aff. (Docket No. 32) Ex. 1.)

Beltran offers a different account of the evening, saying that four officers pointed guns at her while she was in the car, that she was moved from car to car, and that she was "held" for more than two hours.  She brought this lawsuit in Wabasha County, raising a single claim of a violation of her constitutional rights under 42 U.S.C. § 1983.  Defendants removed the case to federal court, and now move for summary judgment, contending that qualified immunity shields them from liability for Beltran's claims.

Beltran's pleadings are less than clear, and thus the parameters of her constitutional claims are difficult to discern.  Her opposition memorandum mentions unlawful seizure in detaining her, patting her down, and not allowing her to use the bathroom.  It also references alleged "interrogations" without benefit of Miranda warnings, and a Minnesota criminal-procedure rule that requires an officer to cite a petty misdemeanant and release them.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of

4

showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### A.     Qualified Immunity

Qualified immunity protects police officers from suit unless "their conduct . . . violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A police officer "is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015).

The Supreme Court has recently emphasized that the qualified-immunity inquiry should focus on whether there are any cases "where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [Constitution.]" White v. Pauly, 137 S. Ct. 548, 552 (2017). In other words, while there does not have to be a case "'directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. at 551 (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)).

**B.      Unreasonable Seizure**

Beltran appears to concede that the stop of the vehicle was appropriate, and even that the search of the vehicle was constitutional.  She objects to how long the officers held her before releasing her, that they did not allow her to use the bathroom, that they conducted a pat-down search, and that they allegedly "interrogated" her without first giving her Miranda warnings.

A lawful traffic stop may include a detention of the vehicle's occupants to allow an officer to check their identification and make other inquiries.  De La Rosa v. White, 852 F.3d 740, 743 (8th Cir. 2017).  But "extending the detention beyond the time needed to complete the traffic-ticketing process is unlawful unless additional investigation . . . is warranted by the officer's reasonable suspicion that other criminal activity may be afoot." Id.  Thus, to be entitled to qualified immunity, the Deputies must establish that they had reasonable suspicion regarding other criminal activity that warranted Beltran's detention.

The Deputies have sufficiently established that they had a "particularized and objective basis for suspecting legal wrongdoing."  United States v. Arvizu, 534 U.S. 266, 273 (2002).  They both independently noticed the strong odor of marijuana in the car, and Beltran's explanation for where they were going was contradicted by the direction the car had actually been traveling.  See United States v. Barry, 394 F.3d 1070, 1078 (8th Cir. 2005) (finding that officer's observation of smell of marijuana in a vehicle gave officer reasonable suspicion to detain car's occupant); United States v. Sparks, 37 F. App'x 826, 830 (8th Cir. 2002) (noting that a driver's suspicious response to a question about his

destination constituted "articulable suspicion" for expanding the scope of a traffic stop). There is no constitutional violation in the fact of or length of Beltran's detention.[1]

Nor is there any constitutional violation in denying her request to use the bathroom. Although Beltran testified that the "café" she had visited in Elgin was still open and was nearby, the Deputies were trained to allow suspects to use the bathroom only with an escort, and there was no female officer at the scene to escort Beltran. Summoning a female officer would have taken longer than the remainder of the stop, which was approximately 20 minutes.

Beltran's challenge to Barker's pat-down also fails. The officers believed that Beltran was acting suspiciously by digging through her purse and then putting her hands under her shirt. See, e.g., United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006) (providing standard to conduct pat-down search). Barker had a sufficient and reasonable basis to suspect that Beltran might have a weapon on her person, and the pat-down was reasonable.

Beltran argues that the officers violated Minnesota Rule of Criminal Procedure 6.01. This Rule provides that, in cases of petty misdemeanors and misdemeanors not punishable by incarceration, a police officer must issue a citation and release the defendant. Minn. R. Crim. P. 6.01, subd. 1(a), (c). But the Deputies suspected that Beltran was involved with illegal drugs, and thus they reasonably detained her while they

---

[1] Beltran argues that there is a factual dispute regarding the length of her detention and that this dispute should prevent the Court from determining that the detention was reasonable. But even if the Court credits Beltran's statement that she was detained for more than two hours, a two-hour detention is a reasonable length of time in a situation involving drugs and a weapon.

investigated that suspicion. And in any event, this Rule does not give rise to a violation of federal constitutional rights for purposes of a § 1983 claim.

Finally, a § 1983 claim does not lie for alleged violations of Miranda rights. See Hannon v. Sanner, 441 F.3d 635, 638 (8th Cir. 2006) ("The remedy for [a violation of Miranda rights] is suppression of evidence," not a § 1983 action.). Her claim for an alleged violation of her Miranda rights fails.

**CONCLUSION**

As stated at the hearing, this matter presents almost a classic case of qualified immunity. The undisputed facts simply do not amount to a violation of § 1983. Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment (Docket No. 27) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 24, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge